Abel **DAVIS** et al., Plaintiffs,

v.

Rogers C. B. **MORTON**, Secretary of the Interior of the United States of America, et al., Defendants.

No. 9190.

United States District Court,
D. New Mexico.

Dec. 21, 1971.

White, Gilbert, Koch, Kelly & Mc-Carthy, Santa Fe, N. M., for plaintiffs.

Victor R. Ortega, U. S. Atty., Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M., for defendants.

## MEMORANDUM OPINION

BRATTON, District Judge.

This matter came on for evidentiary hearing on the application of the plaintiffs for a preliminary injunction, following which the parties have submitted extensive briefs. The issue for decision in this case is whether the National Environmental Policy Act of 1969 (NEPA), 42 U.S.C.A. § 4321 et seq. (Supp.1971), applies to the Secretary of the Interior when he approves a lease of restricted Indian land under 25 U.S.C.A. § 415 (Supp.1971). The material facts are not in dispute.

On April 17, 1970, a 99 year lease of restricted Indian lands was executed by the Pueblo of Tesuque as lessor and Sangre de Cristo Development Company, Inc., as lessee. The lease provides that Sangre de Cristo, a New Mexico corporation, shall develop the leased premises for residential, recreational and commercial purposes, beginning with a tract consisting of some 1300 acres (Tract I). The lease and accompanying master plan contemplate a small city, and accordingly the lease grants options to Sangre de Cristo on 4,100 acres in addition to Tract I. The residential lots on Tract I vary in size from ⅓ acre to almost one acre, and the tract includes space for a golf course, tennis club, apartment houses and condominiums.

The pueblo is authorized to lease its property by the provisions of 25 U.S.C. A. § 415. This section requires that the Secretary of the Interior approve all leases thereunder and provides a maximum term of 99 years. On May 24, 1970, the lease agreement here involved was approved by the Area Supervisor of the Bureau of Indian Affairs for the New Mexico District, acting on specific authorization of the Secretary of the Interior.

The plaintiffs herein, two individuals who reside near the border of the Tesuque reservation and two non-profit environmental corporations, brought this suit asking that the Secretary's approval of the lease be declared invalid and that further development of the leased premises be enjoined on the grounds that the Secretary did not comply with the provisions of the NEPA. Specifically, the plaintiffs claim that the Secretary violated § 102(C) of the Act (42 U.S.C.A. 4332(C)) because he approved the lease without first obtaining an environmental impact statement as required in that section.[1]

---

1. The pertinent portions of the NEPA are:

   § 4332. Cooperation of agencies; reports; availability of information; recommendations; international and national coordination of efforts

   The Congress authorizes and directs that, to the fullest extent possible: (1) the policies, regulations, and public laws of the United States shall be inter-preted and administered in accordance with the policies set forth in this chapter, and (2) all agencies of the Federal Government shall—

   \*    \*    \*    \*    \*

   (C) include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human en-

The defendants, the Secretary of the Interior, the Commissioner of Indian Affairs and the Bureau of Indian Affairs Area Supervisor, do not seriously contest the court's jurisdiction or the standing of the plaintiffs to bring the suit,[2] and they admit that no environmental impact study was ever done on the project contemplated in the lease and that the lease was an action "significantly affecting the quality of the human environment." The sole issue for decision is whether the Secretary's action in approving the lease was "major federal action" as that term is used in § 102(C) of the NEPA.

The lands involved here are owned in fee by the Pueblo of Tesuque, subject to a restraint on alienation without the approval of the Secretary (Pueblo Lands Act, June 7, 1924, 43 Stat. 636). Although the Secretary's approval of the lease herein was required by statute, the United States was not a party to the lease, but rather was acting through the Secretary as a fiduciary or guardian of the interests of the Pueblo in the lease. Thus the only "federal action" occurred not in the lease transaction itself but only in the approval thereof. To call such approval "major federal action" is not warranted in view of the fact that the United States had no interest whatsoever in the lease or in the project of the lessees. The United States did not initiate the lease, participate financially in it, or benefit from it. Its further responsibilities under the lease consist only of subsequent approvals in its role as guardian.

The legislative history of the NEPA is barren of any indication of whether Congress considered the Secretary's approval of Indian leases under 25 U.S.C.A. § 415 to be "major federal action." However, on June 2, 1970 § 415 was amended to provide in part: "Prior to approval of any lease or extension of an existing lease pursuant to this section, the Secretary of the Interior shall first satisfy himself that adequate consideration has been given to * * * the effect on the environment of the uses to which the leased lands will be subject." This amendment effectively requires the Secretary to examine the environmental factors involved in Indian leases and as such serves the same purpose as the NEPA. Congress, therefore, must have considered NEPA inapplicable to Indian leases because otherwise this portion of the amendment to § 415 would have been unnecessary. Such congressional interpretation of its prior Act is not necessarily controlling, but is highly persuasive. The legislative history of the amendment supports this conclusion.

This amendment was made in the Senate Interior and Insular Affairs Com-

---

vironment, a detailed statement by the responsible official on—

    (i) the environmental impact of the proposed action,

    (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,

    (iii) alternatives to the proposed action,

    (iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and

    (v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

Prior to making any detailed statement, the responsible Federal official shall consult with and obtain the comments of any Federal agency which has jurisdiction by law or special expertise with respect to any environmental impact involved. Copies of such statement and the comments and views of the appropriate Federal, State and local agencies, which are authorized to develop and enforce environmental standards, shall be made available to the President, the Council on Environmental Quality and to the public as provided by section 552 of Title 5, and shall accompany the proposal through the existing agency review processes.

2. Jurisdiction is conferred by 28 U.S.C. § 1331 (federal question) and 5 U.S.C. § 701 et seq. (review of administrative action). Plaintiffs have alleged sufficient interests, economic and otherwise, to have standing to sue. Upper Pecos Ass'n v. Stans. 452 F.2d 1233 (10th Cir. 1971).

mittee. In that Committee's report it was stated with reference to the environmental requirement:

"The concern of the committee stems from the fact that investments made on the basis of such long-term leases may include construction and development without regard to the environmental impact nor appropriate machinery for prevention of pollution.

\* \* \* \* \* \*

While it is not the intention of the committee to unduly burden development plans for Indian lands, the committee and the Department of the Interior have an obligation to protect the public interest and safety. The purpose of the committee amendment is to require that the Secretary of the Interior satisfy himself that adequate consideration has been given to the provision of fire and police protection and enforcement of appropriate land use regulations, pollution control and health and safety standards. \* \* \* "

2 U.S.Code Cong. & Admin.News, p. 3243 (1970).

If the NEPA applied to approval of Indian cases under Sec. 415 there would be no reason for such concern or requirement as to the environmental aspects.

Plaintiffs also claim that the Secretary, in approving the Tesuque lease, failed to consider the environmental effect of the proposed project as required by the June 2, 1970, amendment to 25 U.S.C.A. § 415. This claim, however, is without merit since the amendment did not become effective until after the Secretary approved the lease.

The Secretary's approval of the lease in question was not "major federal action" as that term is used in the NEPA and the Secretary was not required to obtain an environmental impact statement thereunder prior to that approval. Accordingly, there appearing no likelihood that the plaintiffs will prevail upon the merits of the action, the motion for a preliminary injunction will be denied.