The SCENIC RIVERS ASSOCIATION OF OKLAHOMA, and the Illinois River Conservation Council, corporations, Plaintiffs,

v.

James T. LYNN, Secretary of Housing and Urban Development and George K. Bernstein, Administrator of Interstate Land Sales, Department of Housing and Urban Development, Defendants,

and

Flint Ridge Development Co., a joint venture, Intervening Defendant,

and

The United States of America ex rel. the Environmental Protection Agency, Additional Defendant.

No. 74–131–C.

United States District Court,
E. D. Oklahoma.

Sept. 4, 1974.

Andrew T. Dalton, Jr., James N. Khourie, Tulsa, Okl., James A. Ikard, Oklahoma City, Okl., for plaintiffs.

Dennis A. Dutterer, Atty., Land & Natural Resources Div., Dept. of Justice, Washington, D.C., Edwin Gage, Asst. U.S. Atty., Muskogee, Okl., Peter S. Race, Atty., Dept. Housing & Urban Development, Washington, D.C., Gordon B. Cecil and E. Paul Thieman, Tulsa, Okl., for Flint Ridge Development Co., James T. Lynn, Sec. of HUD and George K. Bernstein, Admr. of Interstate Land Sales, HUD, Washington, D. C., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

### Statement of Case

The Scenic Rivers Association of Oklahoma, an Oklahoma non-profit corporation, and The Illinois River Conservation Council, Inc., a non-profit Oklahoma corporation, filed this action in this court for the following reasons:

1. Plaintiffs seek a declaratory judgment decreeing that the Department of Housing and Urban Development, the agency in charge of administering the Interstate Land Sales Act, 15 U.S.C. § 1701 et seq., must, prior to approval and registration of a Statement of Record and Property Report under the Interstate Land Sales Act, conduct an environmental impact study in compliance with the National Environmental Policy Act, 42 U.S.C. § 4331 et seq., and the guidelines of the Council on Environmental Quality and the Department's own guidelines promulgated under the National Environmental Policy Act requirements.

2. Plaintiffs further seek injunctive relief requiring H.U.D. to withdraw approval of Interstate Land Sales filings pending the Environmental Review Process as same pertains to the Property Report and Statement of Record filed by Flint Ridge Development Co. effective May 2, 1974.

Flint Ridge Development Co. joined these proceedings as an intervening defendant on the morning this case was brought to trial, first requesting to appear as *Amicus Curiae,* which request was denied. Then Flint Ridge Development Co. was permitted to intervene as a party defendant with the understanding that it could withdraw at the end of the trial if it chose to do so. The Court finds now that Flint Ridge Development Company may withdraw if it

chooses to do so, but to the knowledge of the Court it has not filed any written request to withdraw from these proceedings so the Court finds that Flint Ridge may or may not remain in the case as it sees fit.

This action is primarily and in all things an action against the defendants James T. Lynn, Secretary of Housing and Urban Development, and George K. Bernstein, Administrator of Interstate Land Sales, Department of Housing and Urban Development, and the United States of America, ex rel the Environmental Protection Agency, for the sole purpose of requiring these governmental agencies to comply with the Acts of Congress relating to environmental protection. This action has two principal issues for the Court to determine:

1. Whether H.U.D.'s action in approving the Property Report and Statement of Record for Flint Ridge Development Co., under the Interstate Land Sales Act, constituted major federal action; and

2. Whether the development itself, together with any peripheral developments associated therewith, would significantly affect the quality of the human environment, of which the Illinois River, its basin and tributaries, is a part.

The Court heard many learned expert witnesses who testified generally and specifically as to the actual potential result of the Flint Ridge Development Co.'s project in the counties of Delaware and Adair, Oklahoma. The Court heard testimony of the Flint Ridge Development Co., the federal defendant, H.U.D. and the Oklahoma State Departments of Health and Water Resources.

The Court, having carefully examined the files, the briefs, pleadings, testimony, exhibits and the issues involved in this case, makes the following Findings of Fact and Conclusions of Law:

*Findings of Fact*

1. The Illinois River and its basin which is situated in eastern Oklahoma beginning at the western boundary of Arkansas and continuing westerly to Lake Tenkiller near Muskogee, Oklahoma, is within the boundaries of the Eastern District of Oklahoma.

2. The plaintiffs are both residents of the State of Oklahoma and are actively engaged in the preservation of the Illinois River basin and other similar areas in Oklahoma.

3. "Flint Ridge" is a joint venture organized and promoted by Flint Ridge Development Company. The Court finds that Flint Ridge Development Co. has located its joint venture project on the Illinois River basin because of the beauty the river affords for such a development. The attractiveness of the Illinois River basin was and is the motivating factor in Flint Ridge Development Co. seeking out this specific location for promotional purposes.

4. Flint Ridge Development Co. has filed its Statement of Record and Property Report and has divided the property for the purpose of selling to prospective home builders throughout the United States and has done so by use of the United States mails.

5. Flint Ridge Development Co. proposes to sell 3,000 lots ranging in price from $6,500 to $25,000 per vacant lot. If each lot sold for $6,500, the gross revenue to the development would be $19,500,000; that if all 3,000 lots were sold at $25,000 each, the gross sales would be $75,000,000; that if the gross amounts were added together and divided by two, Flint Ridge Development Co. would have a gross income of $47,250,000. These figures reflect the magnitude of the development and show that H.U.D.'s action in approving the Property Report and Statement of Record under the Interstate Land Sales Act constituted major federal action.

6. Flint Ridge Development Co. is a joint venture composed of Frates Development Company, Tulsa, and Flint Ridge Development Co., Inc. of Tulsa, Oklahoma. Frates Development Company is a subsidiary of Frates Properties, Inc., of Tulsa, Oklahoma, and

Flint Ridge Development Co., Inc. is a wholly owned subsidiary of Context Industries, Inc., of Miami, Florida. This joint venture owns the development known as "Flint Ridge" and does business in the Eastern District of Oklahoma.

7. The Department of Housing and Urban Development is a federal instrumentality which, through its sub-agency, the Office of Interstate Land Sales, has statutory and administrative responsibilities for enforcement and administration of the Interstate Land Sales Act.

8. The plaintiff organizations are comprised of individuals and affiliated conservation outdoor organizations. Plaintiffs have filed with the Clerk of this Court a list of several thousands of signatures of individuals living in and around the eastern part of Oklahoma stating and claiming frequent and consistent use of the Illinois River for purposes of hiking, camping, scouting, canoeing, fishing, swimming and general outdoor recreational purposes.

9. The United States Constitution provides that Congress shall regulate Interstate Commerce and Congress saw fit to create the statutory authority for H.U.D. to administer the Interstate Land Sales Act and also to establish the Environmental Protection Agency for the sole purpose of protecting environmental areas for the use of the citizens of this country.

10. The Illinois River is a state-designated "scenic river" and the river as a matter of fact possesses substantial esthetic qualities, which qualities in fact caused Flint Ridge Development Co. to undertake its development in this area.

11. The evidence is clear that the present and proposed development by Flint Ridge Development Co. comprises approximately 7,000 acres, with an ultimate proposal of acquiring an additional 14,000 acres.

12. The Court finds that each lot sold and home built will contain a septic tank for all human refuse. Upon completion of the project 3,000 septic tanks will dispose refuse into the Illinois River. The soil in this particular area is made up primarily of limestone gravel, chert rock or gravel and clay, and that the soil is very porous and the seepage from the 3,000 septic tanks will soon find its way into the clear waters of the Illinois River and cause pollution damage thereof and destroy forever the environmental quality of the Illinois River Basin.

13. It is important to remember that plaintiffs made demand upon H.U.D. to prepare an environmental impact statement prior to approval of the Statement of Record and Property Report. This H.U.D. refused to do. The Court finds that H.U.D.'s refusal to prepare the environmental impact statement and to perform its duty under the guidelines of the National Environmental Policy Act, the Council of Environmental Quality or its regulations was serious dereliction of its duty imposed upon it by Congress.

14. Flint Ridge Development, together with its peripheral developments has actual or potential substantial effect upon the depth and course of the Illinois River, its tributaries and drainage area, to the plant life, the wildlife habitats, the fish and wildlife, soils, air, esthetics of the area and upon the socio-economic conditions in the area including such matters as health and hospital care and facilities, roads and highways, schools, police and fire protection.

15. Flint Ridge Development Co. is an organization which directly or indirectly sells or leases, or offers to sell or lease, or advertises for sale or lease, lots in a subdivision, containing more than 50 lots, pursuant to a common sales scheme and in Interstate Commerce.

16. Under the Interstate Land Sales Act the Office of Interstate Land Sales, a sub-agency of the Department of Housing and Urban Development, has the authority and duty to issue rules and regulations providing for an exemption from the provisions of the Act, the authority to review filings under the Act, and to

note deficiencies therein (thereby suspending the effectiveness of the filing until such time additional information as the Secretary shall require is provided and the deficiencies corrected), the authority to conduct hearings and make findings and conclusions with respect thereto in connection with filings under the Act, the authority to suspend the effectiveness of the Statement of Record and Property Report under amendments filed subsequent to the effective date of the Act of the filings, the authority to suspend the Statement of Record upon a finding of any untrue statement of a material fact or omission to state any material fact required to be stated or necessary to make the statements not misleading, and the authority to conduct investigations and initiate criminal prosecutions for violation of the provisions of the Interstate Land Sales Act.

That upon the initial filing of the Statement of Record and Property Report by Flint Ridge Development Co., the Office of Interstate Land Sales did in fact find deficiencies and did in fact suspend the effectiveness of the Statement of Record in excess of 30 days from the filing date and according to the testimony of an official representative of the Office of Interstate Land Sales that Flint Ridge Development Co. was prohibited from selling lots during the period of this suspension.

■ 17. That whenever a Federal agency makes a decision which permits action by other parties, public or private, which will affect the quality of the human environment, such decision constitutes major federal action, which is what occurred in this case. Scientists' Institute for Public Information, Inc. v. A.E. C., 156 U.S.App.D.C. 395, 481 F.2d 1079 (1973).

■ 18. That there is an overriding public interest in preservation of the character of the area described generally as the Illinois River Basin and that the public interest in preserving the character of that ecosystem is one that the plaintiffs may seek to protect by obtaining equitable relief. Wyoming Outdoor Coordinating Council v. Butz, 484 F.2d 1244 (C.A. 10, 1973).

19. That the Department of Housing and Urban Development by its subagency, the Office of Interstate Land Sales, has not brought its policies and procedures into compliance with requirements of the National Environmental Policy Act, Title 42 U.S.C. Sec. 4333, in that they have no rules, regulations or guidelines promulgated so as to enable them to comply with the National Environmental Policy Act's purposes and intendments.

20. That the defendant, H.U.D., and the Office of Interstate Land Sales, in administering and enforcing the Interstate Land Sales Act and making decisions associated with such administration and enforcement, have not, in whole or in part, complied with any of the mandatory requirements contained in 42 U.S.C. Sec. 4332.

### Conclusions of Law

1. The Court has jurisdiction and venue (28 U.S.C. § 1391(e)) over the instant case and the plaintiffs have standing to bring this action.

■■ 2. The National Environmental Policy Act applies to all Federal agencies and their subdivisions and requires that all Federal agencies "to the fullest extent possible" must strictly comply with the requirements of the National Environmental Policy Act. The Court further finds as a matter of law that every Federal agency, at the lowest possible level, is required to consider the effects of each decision made by that agency upon the environment and to use all practicable means to avoid environmental degradation. Calvert Cliffs' Coordinating Committee v. A.E.C., 146 U.S. App.D.C. 33, 449 F.2d 1109 (1971); Davis v. Morton, 469 F.2d 593 (C.A. 10, 1972); Ely v. Velde, 451 F.2d 1130 (C. A. 4, 1971); See, National Helium Corporation v. Morton, 455 F.2d 650 (C.A. 10, 1971).

3. There is nothing contained within the Interstate Land Sales Act which specifically excludes N.E.P.A. application. See, Davis v. Morton, *supra*.

4. H.U.D. contends there is no major federal action involved. The concept of major federal action has evolved from the concept of Federal planning, participation in, funding or benefit from a project, See Natural Resources, Inc. v. Grant, 341 F.Supp. 356 (E.D.N.C., 1972), to include those federal actions taken as a result of an agency decision which permits an action by other parties which will affect the quality of the human environment. Scientists' Institute for Public Information, Inc. v. A.E.C., 156 U.S.App.D.C. 395, 481 F.2d 1079 (1973). Nowhere is the evolution of the concept of major federal action more complete than in the Tenth Circuit. Wyoming Outdoor Coordinating Council v. Butz, 484 F.2d 1244 (C.A. 10, 1973); Davis v. Morton, *supra*; National Helium Corporation v. Morton, *supra*. These cases hold and reflect that N.E.P.A. is intended to interrupt business-as-usual and to affect the decision-making process at the lowest agency level. N.E.P.A., with its unequivocal command to implement its policy, "to the fullest extent possible" does not render the procedural requirements discretionary. Calvert Cliffs' Coordinating Committee v. A.E.C., *supra*; Ely v. Velde, 451 F.2d 1130 (C.A. 4, 1971).

The decision of the Interstate Land Sales Office to either approve or suspend or to ascertain that deficiencies exist, or have been corrected, in the Statement of Record or Property Report, is major federal action. The case of Davis v. Morton, *supra,* together with the cases cited therein, hold that major federal action exists when the only action was approval by the Government of a project, licensing, permitting a project or enterprise or abandoning a railroad line. In the *Davis* case the sole federal action involved was an approval, under a delegation of powers, or a lease of Indian lands by a local Department of Interior official.

5. Where a federal license or permit is involved, or where Congress possesses and has utilized its plenary power of regulation under the Interstate Commerce Clause, or other Constitutional authority, federal approval constitutes major federal action. The approval of a filing under the Interstate Land Sales Act is in the nature of a federal license or permit, for without the approval it is unlawful to engage in sales and Congress has exercised its plenary power under the Interstate Commerce Clause by enacting the Interstate Land Sales Act.

6. The National Environmental Policy Act compels Federal agencies to review and reappraise existing policies and procedures in light of developing law and in light of developing agency awareness of environmental factors, 42 U.S.C. § 4332. "The Sweep of N.E.P.A. is extraordinarily broad, compelling consideration of any and all types of environmental impact on federal action," Calvert Cliffs' Coordinating Committee v. A.E.C., *supra*.

7. Plaintiffs must establish an overriding public interest in the preservation of the character of the area under concern and that there is a threat of environmental injury without compliance of N.E.P.A.'s procedures. Wyoming Outdoor Coordinating Council v. Butz, *supra;* Calvert Cliffs' Coordinating Committee v. A.E.C., *supra*. The Court concludes as a matter of law that the plaintiffs have met this burden.

8. One of the burdens of plaintiffs is to demonstrate either actual or potential or threatened results that will significantly affect the quality of the human environment. Wyoming Outdoor Coordinating Council v. Butz, *supra*. The Court further concludes that it is one of the purposes of the National Environmental Policy Act to determine with more exactitude what the actual or potential environmental impacts would be and to take steps to minimize or prevent both long-range and short-range impacts. The Court finds as a matter

of law that the plaintiffs have met this burden.

9. As a general rule these impacts include, but are not limited to, effects upon the depth or course of stream, plant life, wildlife habitats, fish and wildlife, soil, the air, the quality of water, social and economic impacts, and effects upon esthetics and recreational opportunities. Natural Resources, Inc. v. Grant, *supra*. The Court notes from its findings of fact and conclusions of law that the plaintiffs have demonstrated actual and potential environmental effects in all of these areas, and therefore, that the decision to approve the Statement of Record and Property Report by H.U.D. of Flint Ridge Development Co. is a major federal action which "significantly affects the quality of the human environment."

10. The Court further concludes, as a matter of law, that any attorney fees and costs to be assessed against the defendant, United States of America, or the Flint Ridge Development Co. shall be heard and considered upon proper application after the action of this Court has become final or after a final Order of any appellate court.

An appropriate Order and Judgment will be entered accordingly herein.

## ORDER, JUDGMENT AND DECREE

Based upon the Findings of Fact and Conclusions of Law this day filed, it is the order, judgment and decree of this court that:

1. The Department of Housing and Urban Development and the Office of Interstate Land Sales be, and they are hereby enjoined and restrained from approving the Interstate Land Sales filing of Flint Ridge Development Co. until such time as the environmental impact study has been prepared and a public hearing held thereon, and further the Department of Housing and Urban Development and the Office of Interstate Land Sales of that Department are hereby ordered to immediately withdraw the approval of the Flint Ridge Development

Co. filing which was effective May 2, 1974, and not to reinstate said approval until the further Order of this Court.

2. Plaintiff will post bond in the amount of $100.00.

3. The Department of Housing and Urban Development of the United States Government shall conduct a full, thorough and complete environmental impact study of the effects of the Flint Ridge development on the quality of the human environment and that they specifically and in detail address themselves to the following:

(a) The environmental impact of the proposed actions;

(b) Any adverse environmental effects which cannot be avoided should the proposal be implemented;

(c) Alternatives to the proposed action, including no action;

(d) The relationship between the local short-term uses of man's environment and the maintenance and the enhancement of long-term productivity;

(e) Any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.

The Department of Housing and Urban Development is further ordered to consult with, and obtain the comments of, any and all other federal agencies which have jurisdiction by law or special expertise with respect to any environmental impact involved.

4. Upon completion of the impact study, a copy thereof shall be filed with this Court.

5. The environmental impact statement shall be made available to the President of the United States, the Council on Environmental Quality and to the public as provided by Title 5 U.S.C. § 552 and Title 42 U.S.C. § 4332(C).

6. The injunction and restraining order set out in paragraph 1 hereof shall be administered by James T. Lynn, Secretary of Housing and Urban Devel-

lopment and his successor and by George K. Bernstein, Administrator of Interstate Land Sales, Department of Housing and Urban Development and his successor. That a certified copy of this Order shall be served by registered mail upon James T. Lynn and George K. Bernstein at HUD Building, 451 Seventh Street S.W., Washington, D.C. 20410.

7. It is specifically Ordered that the property report and statement of record filed by Flint Ridge Development Company, a joint venture, be, and the same are hereby suspended, vacated and held for naught, and no further public sales shall be conducted thereunder unless and until further Order of the Court.

A certified copy of this Order shall be delivered by registered mail to Flint Ridge Development Company c/o F. Paul Thieman, Jr., Attorney, 5800 East Skelly Drive, Tulsa, Oklahoma 74135.