State of UTAH, Plaintiff,

v.

The UNITED STATES DEPARTMENT OF the INTERIOR, et al., Defendants,

Private Fuel Storage, L.L.C., Defendant–Intervenor.

United States ex rel. Sammy Blackbear, Sr., et al., Plaintiffs,

v.

Bruce Babbitt, et al., Defendants.

Nos. 2:98 CV 380 K, 2:99 CV 156 K.

United States District Court, D. Utah, Central Division.

April 9, 1999.

**1280**

Philip C Pugsley, Mr., Utah Attorney General's Office, Salt Lake City, UT, for State of Utah, plaintiff.

John Paul Kennedy, Mr., Salt Lake City, UT, for The Confederated Tribes of the Goshute Reservation, movant.

Stephen L. Roth, Mr., U.S. Attorney's Office, for United States Department of the Interior, Bureau of Indian Affairs, Phoenix Area Director, Bureau of Indian Affairs, Superintendent of Unitah and Ouray Agency, Bureau of Indian Affairs, defendants.

Val R. Antczak, J. Michael Bailey, Mr., Parsons Behle & Latimer, Salt Lake City, UT, Margaret A. Swimmer, Hall Estill Hardwick Gable Golden Nelson, PC, Tulsa, OK, for Private Fuel Storage, intervenor-defendant.

### ORDER OF CONSOLIDATION and MEMORANDUM DECISION

KIMBALL, District Judge.

On March 12, 1999, the parties in *State of Utah v. United States Dep't of the Interior (Case No. 2:98 CV 380)* [the "Utah Suit"] were before the Court to argue cross motions for summary judgment filed by Plaintiff State of Utah (the "State"), Defendant United States,[1] and Defendant–Intervenor Private Fuel Storage L.L.C. ("PFS"). At that time, the Court recognized counsel for the plaintiffs in the recently-filed suit of *United States ex rel. Sammy Blackbear, Sr. v. Babbitt (Case No. 2:99 CV 156K)* [the "Blackbear Suit"], who moved the Court to abstain from ruling on the cross motions until the Court considered the motion of the Blackbear Suit plaintiffs to consolidate their suit with the Utah Suit. The Court agreed to do so, hearing only oral argument of the cross motions at that time.

1. Representing Defendants United States Department of the Interior; Bureau of Indian Affairs; the Phoenix Area Director, Bureau of Indian Affairs; and the Superintendent of Uintah and Ouray Agency, Bureau of Indian Affairs.

Oral argument of the Blackbear Suit plaintiffs' motion to consolidate was held on April 6, 1999. For the reasons set forth below, this Court grants that motion and the motion for summary judgment of the Utah Suit defendants on the issue of the State's standing to participate in the 25 U.S.C. § 415(a) lease approval proceeding. The Blackbear Suit plaintiffs shall have until July 1, 1999, to respond to the Utah Suit defendants' motion for summary judgment on the FOIA issue; the Utah Suit parties shall have until August 1, 1999, to file any response; and the Blackbear Suit plaintiffs shall have until August 16, 1999, to file any reply. Oral argument of the motion is set for August 24, 1999, at 3:00 p.m.

## I. The Blackbear Suit Plaintiffs' Motion to Consolidate.

 Rule 42(a) of the *Federal Rules of Civil Procedure* authorizes the consolidation of cases sharing common questions of law or fact. Whether to do so is left to the trial court's discretion. *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir.1978). Both cases concern the lawfulness of procedures followed by the Bureau of Indian Affairs ("BIA") in approving a particular lease under 25 U.S.C. § 415(a), and both present the same issues regarding the BIA's compliance with the Freedom of Information Act in the course of those proceedings. These commonalities are sufficient to warrant the consolidation of the two matters.

Accordingly, pursuant to Rule 42(a) and DUCivR 42–1, the case of *United States ex rel. Sammy Blackbear, Sr. v. Babbitt* (Case No. 2:99 CV 156K), is **HEREBY** consolidated with the above-referenced case

## II. The Utah Suit Cross Motions for Summary Judgment.

In the Utah Suit, the State seeks the reversal of various decisions made by the

BIA in the course of a lease approval proceeding pursuant to 25 U.S.C. § 415(a). The parties to that suit have agreed that the material facts are undisputed and that the matter may be adjudicated as a matter of law.

### BACKGROUND

In May, 1996, the Skull Valley Band of Goshute Indians (the "Band"), a federally-recognized Indian tribe, and PFS began negotiations for the lease of lands within the Skull Valley Reservation, which are held in trust by the United States for the Band's benefit. PFS intends to construct and operate a temporary storage [2] facility for high-level nuclear waste, known as spent nuclear fuel ("SNF"). The enterprise faces strong political opposition in Utah, stemming primarily from the close proximity of the proposed lease site to the State's major population center—a concern that is heightened by the fact that extremely lethal waste is to be placed in casks designed for very short-term storage while prospects for the development of a permanent repository for that waste appear bleak.

Pursuant to *25 U.S.C. § 415(a)*, any lease of trust lands must be approved by the Secretary of the Interior, or his designee. Among other things, that section requires the Secretary to "first satisfy himself that adequate consideration has been given to the relationship between the use of the leased lands and the use of neighboring lands; the height, quality, and safety of any structures or other facilities to be constructed on such lands; the availability of police and fire protection and other services; the availability of judicial forums for all criminal and civil causes arising on the leased lands; and the effect on the environment of the uses to which the leased lands will be subject."

Pursuant to § 415(a), the Band submitted the proposed lease with PFS (the "Lease")[3] to the BIA. On May 23, 1997,

---

**2.** In the vernacular of radioactive waste, "storage" refers to any disposition of waste

that is intended to be less than final or permanent.

**3.** Titled the Amended and Restated Business

the Superintendent of the Uintah and Ouray Reservation (the "Superintendent"), acting under authority delegated to him by the Secretary of the Interior, approved the Lease. He did so, however, subject to evaluation of the environmental impacts of the Lease in accordance with the National Environmental Policy Act ("NEPA"), *42 U.S.C. § 4332(2)(C)*, and subject to the issuance of a license by the Nuclear Regulatory Commission (the "NRC").

In effect, the Superintendent has delegated his *§ 415(a)* responsibilities to consider the health, safety, and environmental consequences of the lease to the NRC, which, in conjunction with its licensing proceedings, is performing the NEPA review as the lead agency. The State sought to intervene in the NRC's proceedings and was admitted as a party.

The State also sought to intervene in the Lease approval process before the Superintendent, who determined that the State did not have standing. The Superintendent's decision was upheld on appeal to the Area Director of the Phoenix Area Office of the BIA and to the Interior Board of Indian Appeals.

In the course of the *§ 415(a)* lease approval proceedings, the State made a request to the BIA, under the Freedom of Information Act ("FOIA"), *5 U.S.C. § 552*, for the release of certain documents, including a copy of the Lease. The BIA provided a copy of the Lease, but redacted certain information regarding financial and other terms on the grounds that the redacted portions fell within the FOIA exemption for protected commercial and financial information. The State also administratively appealed that decision.

On May 27, 1998, the State filed this lawsuit, seeking declaratory relief (I) reversing the BIA's determination that the State lacks standing, (ii) requiring the BIA to include the State as a full participant in any remaining *§ 415(a)* proceedings, and

(iii) requiring the Superintendent to produce the redacted portions of the Lease.[4]

### DISCUSSION

As a threshold issue this Court must determine whether the State has standing either to intervene as a party in the *§ 415(a)* lease approval proceedings or to appeal the Superintendent's decision approving the Lease. Neither *§ 415(a)* nor its implementing regulations provide for such a right, and no federal case law addresses the issue of standing pursuant to *§ 415(a)* in this context.

The State asserts that it has standing, as *parens patriae* to the citizens of Utah, pursuant to two sections of the Administrative Procedure Act ("APA"), *5 U.S.C. § 551, et seq. and 701, et seq.*

**1. Standing Pursuant to 5 U.S.C. § 702.**

When constitutional requirements are otherwise met, the judicial review provisions of the APA, *5 U.S.C. § 701–06*, grant standing to any "person suffering legal wrong because of agency action within the meaning of a relevant statute." *5 U.S.C. § 702*. In the absence of an explicit provision in the relevant statute permitting suit, the Supreme Court has interpreted *§ 702* to require both that the complainant suffer injury in fact and that the complainant seek to protect an interest that is "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153–54, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). "In cases where the plaintiff is not itself the subject of the contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that

Lease.

4. During oral argument, counsel for the State clarified that the State does not seek reversal

of the Superintendent's conditional approval of the Lease.

Congress intended to permit the suit." *Clarke v. Securities Industry Ass'n,* 479 U.S. 388, 398, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987).

 Plaintiff acknowledges that § *415(a)* is primarily concerned with protecting Native American interests by insuring that their land transactions with third parties are advantageous. *See, e.g., Webster v. United States,* 823 F.Supp. 1544, 1550 (D.Mont.1992), *aff'd.* 22 F.3d 221 (9th Cir.1994); *Hawley Lake Home-owners' Ass'n v. Deputy Assistant Secretary,* 13 IBIA 276, 288–89 (1985) *(explaining that purpose of Secretary's approval is to ensure that Indians are not improvident in dealings concerning their trust property and that Indians are not taken advantage of in such transactions).* Plaintiff argues, however, that § *415(a)* went beyond protecting merely Indian interests in 1970 when it was amended to include the requirement, quoted above, that before approving any lease the Secretary must satisfy himself that adequate consideration has been given to, among other things, the effect of the proposed lease on neighboring lands and on the environment.

Plaintiff asserts that the Court of Appeals for the Tenth Circuit recognized this broader purpose in *Davis v. Morton,* 469 F.2d 593 (10th Cir.1972). The effect of *Davis* was to overturn the BIA's approval of a lease between the Tesuque Indian Pueblo and a development company on the ground that the BIA had failed to conduct the necessary NEPA review. The issue presented was whether the Secretary's approval of a lease pursuant to § *415(a)* constitutes "major Federal action" subject to the requirements of NEPA. *Davis* held that it is.

*Davis* contains only a brief discussion of the language in § *415(a)* that is at issue here. The lower court had concluded that NEPA did not apply to § *415(a)* lease approvals on the ground that if NEPA did apply, the 1970 amendment would have been unnecessary. In rejecting that line of reasoning, the Tenth Circuit applied the principle that unless the obligations of a statute are clearly mutually exclusive with the mandates of, NEPA, NEPA applies. With respect to the 1970 amendment, the Tenth Circuit explained, "The general statement in § *415* in no way implies leases on Indian lands were not covered by NEPA. The amendment merely reaffirms congressional intent that environmental considerations are to play a factor in any Bureau of Indian Affairs decision." *Id.* at 598. This limited discussion is not helpful in resolving the issue at bar.[5]

In support of its position, the State emphasizes that plaintiffs need only demonstrate a "modest relationship" between the interest advanced and the purpose of the statute to satisfy the zone of interests test. While this is true, it is also true that in approving or rejecting leases pursuant to § *415(a),* the Secretary acts in a trust or fiduciary capacity. The legal attributes of such a relationship include a duty on the part of the trustee to act solely in the best interests of the trust beneficiary. To read § *415(a)* to give legally enforceable rights to parties having interests that compete with the tribes' would be to impose a duty on the Secretary that is inconsistent with the statute's purpose of protecting tribal interests and resources. Requiring the Secretary to consider the interests of neighboring land owners is much different than extending to those land owners a legally enforceable right to ensure that their interests are not impaired. *See Web-*

---

5. The State also cites *Sangre de Cristo Dev. Co., Inc. v. United States,* 932 F.2d 891 (10th Cir.1991). The case is not instructive here either. *Sangre de Cristo* involved the same project that was at issue in *Davis.* The plaintiff was the development company, which brought suit against the United States when the BIA refused to approve the lease after the requisite NEPA review had been performed. The Tenth Circuit affirmed the lower court's dismissal of the company's claims, which included deprivation of a vested property interest, breach of trust, breach of contract, and negligent preparation of an environmental impact statement.

*ster, 823 F.Supp. at 1549–50 (holding that 1970 amendment does not "mandate clear duties" on the Secretary).*

### 2. Standing Pursuant to 5 U.S.C. §§ 554 and 555.

 Plaintiff also asserts standing pursuant to *5 U.S.C. §§ 554(c) and 555(b).* The former, among other things, requires agencies to "give all interested parties opportunity for . . . the submission and consideration of facts, arguments, offers of settlement, or proposals of adjustment when time, the nature of the proceeding, and the public interest permit." The latter, captioned "ancillary matters," provides, among other things, that:

> So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function.

Plaintiff's reliance on these provisions is unavailing. APA procedures attach only in the event that an independent statute confers a right to a hearing. By its own terms, *§ 554* applies only in cases when an adjudication is required by statute to be determined on the record after opportunity for an agency hearing. *See 5 U.S.C. § 554(a).* Section *415(a)* does not require such an adjudication.

Similarly, *§ 555(b)* is a catchall section that, again, applies only when a rule is required by statute to be made on the record after opportunity for an agency hearing. Nothing in either *§ 555(b)* or any other authority cited by Plaintiff suggests that the section operates to provide standing to parties that are not entitled to standing by statute nor able to satisfy the zone of interests test.

### Conclusion

For the reasons expressed above, the Blackbear Suit plaintiffs' motion to consolidate case number 2:99 CV 156K with case number 2:98 CV 380K is granted. The cross motion for summary judgment filed by the Utah Suit defendants is granted with respect to the issue of the State's standing to participate in the *§ 415(a)* lease approval proceeding. Resolution of the Utah Suit parties' cross motions for summary judgment shall proceed in accordance with the briefing schedule outlined above.