519 F.2d 370
 David L. NORVELL, Attorney General of the State of New
Mexico, et al., Appellees,
v.
SANGRE de CRISTO DEVELOPMENT COMPANY, INC., and Rogers C. B.
Morton, et al., Appellants,
and
Mescalero Apache Tribe, Appellant-Intervenor.
 Nos. 74-1365 to 74-1367.
 United States Court of Appeals,
Tenth Circuit.
 Argued and Submitted March 27, 1975.
Decided June 30, 1975.
 
 Paul L. Bloom, Sp. Asst. Atty. Gen., Santa Fe, N. M. (Frank Bachicha, Jr., Bd. of County Commissioners, Santa Fe, N. M., and Harry S. Connelly, Jr., Santa Fe, N. M., on the brief), for appellee, Norvell.
 Frank Bachicha, Jr., Santa Fe, N. M., for Bd. of County Commissioners, Santa Fe, N. Mex., Intervenor-Appellee.
 John J. Zimmerman, Dept. of Justice, Washington, D. C. (Edmund B. Clark, Anthony S. Borwick, Dept. of Justice, Washington, D. C., Wallace H. Johnson, Asst. Atty. Gen., Santa Fe, N. M., Victor R. Ortega, U. S. Atty., Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M., on the brief), for appellant, Rogers C. B. Morton.
 George E. Fettinger, Alamogordo, N. M. (Norman D. Bloom, Jr., Alamogordo, N. M., on the brief), for appellant-intervenor Mescalero Apache Tribe.
 Philip R. Ashby, P. A., Albuquerque, N. M., amici curiae for Pueblo De Chochiti and Pueblo of San Ildefonso.
 Toby F. Grossman, Albuquerque, N. M., answer brief on behalf of amicus curiae, American Indian Law Center.
 Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 This action was initiated by the State of New Mexico (hereinafter referred to as State or Appellee) in which the Board of Commissioners of Santa Fe County, New Mexico was permitted to join as Intervenor (hereinafter referred to as Board) against Sangre de Cristo Development Company, Inc., et al., (hereinafter referred to as Company), and Rogers C. B. Morton, Secretary of the Interior of the United States, et al., (hereinafter referred to as Federal Defendants) for a judgment declaring that the State has certain jurisdiction over the Sangre de Cristo Development Company and its activities under a 99-year lease granted it in 1970 by the Pueblo de Tesuque, an Indian Tribe, on reservation land within five (5) miles of the City of Santa Fe, New Mexico. Further relief was prayed in the nature of administrative review and injunction. Jurisdiction was predicated under 28 U.S.C. § 2201 and 5 U.S.C. §§ 701-706.
 
 
 2
 The Federal Defendants filed a Motion to Dismiss or in the alternative for Summary Judgment pursuant to Rule 12(b), Fed.R.Civ.P. on the grounds, inter alia, that: the Pueblo of Tesuque is an indispensable party to the action; the Congress has not consented to the suit; and that the action is not a case or controversy within the meaning of Art. III, Section II of the Constitution. The Motion was denied following hearing by an Amended Order of the Trial Court entered on May 19, 1972, wherein the Court made reference to its consideration of "the briefs and arguments" of counsel (the briefs are not before us on appeal) in concluding that the Motions "are not well taken." During those proceedings, counsel for the Federal Defendants argued that the United States Government did not rely upon 25 C.F.R. § 1.4 when the lease was negotiated and, further, that the United States had done nothing in the transaction "to frustrate the State's jurisdiction." He opined that the lease recognizes State jurisdiction in four specific areas. (Vol. II, pp. 41-42). His oral argument was apparently directly at odds with the Federal Defendants's memorandum. (Vol. II, pp. 51-52). However, counsel for Federal Defendants thereafter, in the course of the motion proceedings, attempted to clarify his position, i. e., that he was not conceding State jurisdiction, but rather contending only that if the State should be held to have jurisdiction, the lease requires that the lessee Company comply with applicable State laws (Vol. II, pp. 60-61). Finally, at trial the Federal Defendants took the position that 25 C.F.R. § 1.4 applied and that the State had no jurisdiction.
 
 
 3
 The grounds advanced by the Federal Defendants in support of the 1971 Motion, insofar as they relate to their contention that the action is not a case or controversy within the meaning of Art. III, Section II of the Constitution were based on arguments that: (a) the State's contention that its liquor laws apply to the dispensing of alcoholic beverages on the leased premises is not ripe because no liquor has been served or dispensed; (b) the State's contention that the Construction Industries Commission has jurisdiction is not ripe because no construction has been undertaken and if the sales office of the Company comes within the Act it has not been red-tagged; and (c) the State's "morass of hypothetical confrontations" set forth in Count III, including the matter of ad valorem taxes due to the State, is not ripe for determination because the State has never proceeded to "set foot" on the property to estimate the value of the property and no formal assessment or levy has been made. Significantly, our opinion in Davis v. Morton, 469 F.2d 593 (10th Cir. 1972), had not yet been rendered, wherein we reversed and remanded, holding that the subject lease did involve major federal action requiring compliance with the National Environmental Protection Act (NEPA) mandates.
 
 
 4
 The Federal Defendant's Motion to Dismiss or in the alternative for Summary Judgment was renewed at the conclusion of all of the evidence on or about September 4, 1973. The record does not reflect that further argument was directed to the Court relative to the "ripeness" issue (or solicited by the Court) but it does reflect that the Trial Court was aware of our reversal in Davis v. Morton, supra, and our remand for compliance with NEPA.
 
 
 5
 In its Memorandum Opinion filed February 20, 1974, the Trial Court ruled that the State has jurisdiction over the Company and its activities at its Colonias de Santa Fe Subdivision (on the reservation land under the 99-year lease) for specific purposes. The Court, after reviewing a number of decisions, stated that although there is no question that Congress has plenary powers over all Indian affairs and can, if it so desires, preclude State jurisdiction, it is nevertheless erroneous to assume " . . . that exclusive authority over Indian lands and all uses of and activities thereon is, in the absence of a specific delegation of such authority to the State, vested in the Congress. The States have, on the contrary, had certain authority in the absence of specific preemption of that authority by Congress. The passage of Public Law 280 was not intended to and did not oust existing State jurisdiction." (Appendix, p. 195). The Court observed that without regard to Public Law 280 there are circumstances under which State laws have application on Indian land, in the absence of express federal legislation to the contrary, referring specifically, for example, to murder of a non-Indian by a non-Indian on an Indian reservation, taxation applicable to a non-Indian undertaking activities on Indian reservations, lessees of mineral rights in Indian lands subject to State gross production taxes and State excise taxes on petroleum produced from such lands. The Court also noted that State courts have jurisdiction over actions by Indians against non-Indians. In essence, the Trial Court held that "In the absence of governing acts of Congress, the resolution of whether a given State action is permitted depends on whether it infringes upon the rights of the Indians to make their own laws and be ruled by them." (Appendix, p. 197). Proceeding therefrom, the Court concluded that State of New Mexico laws and actions governed (a) in the issuance, regulation and sale of liquor on the subject lands, (b) subdivision control, (c) in the application of the State Construction Licensing Act, and (d) in the regulation and protection of the water supply, etc. The Trial Court observed that " . . . none of these state laws interfere with tribal self-government" (Appendix, p. 205), and, more directly to the heart of the dispute before us, that State law application in these areas does not conflict with federal preemption under 25 U.S.C.A. § 415(a)[1] and 25 C.F.R. § 1.4.[2] The Trial Court agreed with the State in its contention that § 415(a), supra, "as it stood at the time of the lease was entered into authorized only what is reflected by the provisions of 25 C.F.R. § 131[3] so that Section 415(a) cannot be thought to have vested in the Secretary's authority to regulate such things as construction, water and land subdivision."
 
 
 6
 This appeal was taken from the judgment declaring that specifically designated State of New Mexico statutes are applicable to the Company in its operation and activities at the Colonias de Santa Fe Subdivision under the lease of May 24, 1970, and further that 25 C.F.R. § 1.4 is not a valid and enforceable regulation of the Secretary of the Interior to the Subdivision. Appellants argue that the State of New Mexico is without any jurisdiction whatsoever over the property or activities in relation to the leasehold agreement, inasmuch as the lease and/or sub-leases cover lands owned by the Pueblo of Tesuque.
 
 
 7
 On appeal, during oral arguments, this Court propounded these questions to the parties and directed that supplemental briefs be filed in response thereto, to-wit: (1) Whether there is a proper case and controversy, and one ripe for judicial determination, on the issues decided by the Trial Court; and (2) Whether this action is one in which the grant of declaratory relief was a proper exercise of discretion. The supplemental briefs filed indicate that when the Trial Court judgment of February 20, 1974, was entered it was known that all activities under the Master Lease had been in limbo following the 1972 injunction imposed in Davis v. Morton, supra. We observe that the injunction is even now in force and effect, and that even though some fifteen months have expired since the judgment appealed from, that only the draft statement required by NEPA has been completed and filed by the Department of the Interior with the Council on Environmental Quality; that public hearings were to commence on the draft statement on May 24, 1975; that at the earliest assuming full compliance and no contests no action on the project proposals in terms of the final impact statement could be taken by the Agency for at least four months. Furthermore, the Federal Appellants' supplemental brief points out that: (a) the Secretary of the Interior intends to re-evaluate the propriety of his earlier approval of the 99-year lease in light of the final impact statement; and (b) the Bureau of Indian Affairs, at the request of the Pueblo of Tesuque, is conducting an audit of Company to be presented to the Pueblo Council in June, 1975, and that this could ultimately lead to termination of the lease by the Pueblo and the Secretary of the Interior. Thus, the question of ripeness is now a paramount consideration.
 
 
 8
 The case was tried to the District Court without a jury. The 99-year lease granted by the Pueblo of Tesuque Tribe, by and with the approval and consent of the Bureau of Indian Affairs and the Secretary of the Interior, covers a subdivision of the reservation approximating one-third of the tribal lands, or some 5,000 acres. The tribal population is approximately 300. Generally, the project contemplated use of the lands under the Lease Agreement for a residential-recreational (golf course, etc.) community of non-Indian inhabitants, with adequate commercial facilities, including a hotel or motel with a liquor dispensing unit.
 
 
 9
 The record points up these significant facts: At the time of trial, even though non-Indians had acquired some of the lands by sub-lease agreements with Company (subject to all of the terms, covenants and conditions of the Master Lease), no homes or other building improvements had been constructed or placed on any of the lands by the Company or the sub-lessees. Furthermore, the purposes of the lease agreement were, at best, yet "on the drawing board" for all practical purposes. Perhaps of greater significance is the fact that the Tribal Council of the Pueblo of Tesuque has adopted resolutions and/or ordinances relating to building construction, health, sanitation, and safety standards, design and economic supply of utilities, traffic control, dedication and preservation of land developments for recreational, and other public purposes, and an Ordinance relating to the introduction, sale or possession of intoxicating beverages.
 
 
 10
 The State contends that the Trial Court was confronted with an actual case and controversy inasmuch as the State of New Mexico is directly concerned with the applicability of its laws and regulations not only as to the Company, but derivatively to the community of approximately 15,000 non-Indian persons who will ultimately live and do business in the non-Indian community contemplated by the subdivision development. The State further contends that because the Master Lease has been executed and the subdivision actually initiated, the State is involved in a real and immediate controversy with the Company and particularly so because the Company (a) sold numerous sub-leases without compliance with State subdivision laws, (b) erected one or more structures without compliance with its Construction Industries laws, (c) sold goods to non-Indians in its office without collecting or paying the State's gross receipt tax, and (d) declined to pay ad valorem property taxes to the State and County on its leasehold, and on the value of the improvements placed thereon.
 
 
 11
 We must here observe that this record is de minimus in evidencing structures (actually only one mobile sales office unit, with wheels removed) or the sale of goods to non-Indians (actually only one soft drink vending machine located in the Company's mobile sales office). The refusal of Company to pay ad valorem taxes would seem to involve possible consequences more pertinent than all other sanctions the State claims to be within its governmental jurisdiction.
 
 
 12
 The basic contentions of the defendants-appellants are that the laws and regulations contended for by the State of New Mexico are not valid and enforceable inasmuch as the entire subdivision leased by Company is located within the exterior boundaries of the lands of the Pueblo of Tesuque, an Indian Tribe, whose reservation lands are subject to the exclusive jurisdiction of the Secretary of the Interior of the United States; that the State of New Mexico has disclaimed jurisdiction of these lands by its enabling Act and Constitution; and that the application of the laws and regulations of the State would interfere with the right of self-government of the Tribe and the exclusive preempted control of the United States.
 
 I.
 CASE OR CONTROVERSY
 
 13
 We hold that the Trial Court was without jurisdiction to entertain this action in light of the fact that at the date of trial and entry of judgment there was no compliance with our mandate following our reversal and remand in Davis v. Morton, supra, wherein the identical 99-year Master Lease executed by the Pueblo, as lessor, and Sangre de Cristo Development Company, Inc., as lessee, was held to come within the ambits of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq., and of 25 U.S.C. § 415.
 
 
 14
 We conclude approving leases on federal lands constitutes major federal action and thus must be approved according to NEPA mandates. As our court had occasion to consider once before, this Act was intended to include all federal agencies, including the Bureau of Indian Affairs. See National Helium Corporation v. Morton, 455 F.2d 650 (10th Cir. 1971).
 
 
 15
 469 F.2d 593, at 597-598.
 
 
 16
 The subject 99-year lease has not yet been approved measured by NEPA requirements and it is speculative when or conceivably whether it shall meet NEPA requirements.
 
 
 17
 It is fundamental that federal courts do not render advisory opinions and that they are limited to deciding issues in actual cases and controversies. U.S.Const. art. 3, § 1 et seq.; Barr v. Matteo, 355 U.S. 171, 78 S.Ct. 204, 2 L.Ed.2d 179 (1957); Oklahoma City, Oklahoma v. Dulick,318 F.2d 830 (10th Cir. 1963). A justiciable controversy is distinguished from a difference or dispute of a hypothetical character or from one that is academic. The controversy must be one admitting to specific relief through a decree of a conclusive character, subject to judicial review. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Judicial restraint should be exercised to avoid rendition of an advisory opinion. Detroit Edison Company v. East China Township School District No. 3, 378 F.2d 225 (6th Cir. 1967), cert. denied, 389 U.S. 932, 88 S.Ct. 296, 19 L.Ed.2d 284 (1967).
 
 
 18
 The jurisdiction of the Trial Court was wanting in the case at bar when it proceeded to declare the State's jurisdictional status over the leasehold properties and intended prospective activities, in light of the fact that our mandate in Davis v. Morton, supra, placed the parties to the lease and all activity and development thereunder in "limbo". All progress on the project was and is even now at a standstill.
 
 
 19
 The "case or controversy" criteria are well articulated in O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), wherein Mr. Justice White, writing for the majority, said:
 
 
 20
 Plaintiffs in the federal courts "must allege some threatened or actual injury resulting from the putatively illegal action before a federal court may assume jurisdiction." . . . There must be a "personal stake in the outcome" such as to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." . . . Nor is the principle different where statutory issues are raised. . . . Abstract injury is not enough. . . . The injury or threat of injury must be both "real and immediate" not "conjectural" or "hypothetical." (Emphasis supplied).
 
 
 21
 414 U.S. 488 at 493-494, 94 S.Ct. 669 at 675.
 
 
 22
 Toilet Goods Association, Inc., et al. v. Gardner, Secretary of HEW, et al., 387 U.S. 158, 87 S.Ct. 1520, 18 L.Ed.2d 697 (1967), involved a suit by the Association, consisting of cosmetic manufacturers, seeking declaratory and injunctive relief against the Secretary from the enforcement of a regulation which the Association contended to be in excess of statutory authority. The regulation had not, at the time of suit, been enforced. The Court noted that in determining whether a challenge to an administrative regulation is ripe for review requires that a twofold inquiry be made: first to determine whether the issues tendered are appropriate for judicial resolution; and second, to assess the hardship to the parties if judicial relief is denied at that stage. The Supreme Court held that the legal issue as presented was not "appropriate" or ripe for judicial resolution even though the regulation constituted "final agency action" under § 10 of the Administrative Procedure Act, 5 U.S.C. § 704, because "(T)he regulation serves notice only that the Commissioner may under certain circumstances order inspection of certain facilities and data, and that further certification of additives may be refused to those who decline to permit a duly authorized inspection . . . . At this juncture we have no idea whether or when such an inspection will be ordered and what reasons the Commissioner will give to justify his order." (Emphasis supplied). 387 U.S. 158 at 163, 87 S.Ct. 1520 at 1524.
 
 
 23
 By analogy, we do not know whether the development project shall go forward or, if ultimately authorized following the environmental considerations, the precise activities which may be permitted on the leased lands. It seems perfectly obvious that at this time even conceding the applicability of the statutes contended for by the State that the ongoing activities on the project lands allegedly subject to State jurisdiction are minimal and insignificant in terms of impact. No significant hardship will accrue to the State of New Mexico by a stay of the action on the merits at this time. The State can do no more than presently allege that if the project is approved and developed, it may fall within the statutory ambits. Such is insufficient to meet the case or controversy tests.
 
 
 24
 Abbott Laboratories, et al. v. Gardner, Secretary of HEW, et al., 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), held that pre-enforcement review of HEW regulations requiring that labels and advertisements for prescription drugs did create an "actual" case or controversy because the impact of the regulations upon the petitioners (37 individual drug manufacturers) was sufficiently "direct and immediate" to render the issue appropriate and ripe. The Court pointedly observed that the impact, in terms of compliance, required heavy investments in printing costs.
 
 
 25
 We are aware that in the case of Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), the Court, 5 to 4, held that the cessation of a strike did not render moot the action of an employer seeking to invalidate the State's grant of welfare benefits to striking employees. The Court stressed that the case was not moot because the State had a fixed and definite policy concerning the payment of welfare benefits to strikers and that its continued presence cast that which may well be a substantial adverse effect on the employer's interests.
 
 
 26
 In our view, there is a striking difference between the McCorkle decision and the case at bar. Here, in lieu of a fixed and articulated State policy emanating from the legislative branch or high executive authorities of the State of New Mexico other than the Attorney General contending for State jurisdiction, we are dealing at least insofar as this record reflects with legal contentions and arguments of the New Mexico Attorney General. We do not intend by the aforesaid observation to demean the authority, influence and prestige of the high office of State Attorney General. On questions of State law, courts generally give careful consideration to, and regard as highly persuasive, an opinion of the State's Attorney General where there is no other State precedent. 7 Am.Jur.2d, Attorney General § 8. We do suggest that we cannot equate the legal policies contended by the State of New Mexico in the instant case with those considered by the McCorkle court.
 
 
 27
 In Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Court inquired:
 
 
 28
 Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions? This is the gist of the question of standing. (Emphasis supplied).
 
 
 29
 369 U.S. 186 at 204, 82 S.Ct. 691 at 703.
 
 
 30
 And in Longshoremen's Union v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954), the Court succinctly stated:
 
 
 31
 Appellants in effect asked the District Court to rule that a statute the sanctions of which had not been set in motion against individuals on whose behalf relief was sought, because an occasion for doing so had not arisen, would not be applied to them if in the future such a contingency should arise. That is not a lawsuit to enforce a right; it is an endeavor to obtain a court's assurance . . . . Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function.
 
 
 32
 347 U.S. 222 at 223-224, 74 S.Ct. 447 at 448.
 
 
 33
 And in United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), in construing the "Hatch Act", the Court stated:
 
 
 34
 A hypothetical threat is not enough. We can only speculate (at this point) . . . .
 
 
 35
 330 U.S. 75 at 90, 67 S.Ct. 556 at 564.
 
 
 36
 We thus hold that the District Court was without jurisdiction in that no case or controversy was before it.
 
 II.
 
 37
 THE PROPRIETY OF DECLARATORY JUDGMENT AT THE TIME RENDERED
 
 
 38
 28 U.S.C.A. § 2201 provides, inter alia, that a declaratory judgment may be rendered in a case of actual controversy within its jurisdiction.
 
 
 39
 In Golden v. Zwickler, supra, the Supreme Court noted:
 
 
 40
 "For adjudication of constitutional issues, 'concrete legal issues, presented in actual cases, not abstractions,' are requisite. This is true of declaratory judgments as any other field." United Public Workers of America v. Mitchell . . . "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). (Emphasis supplied).
 
 
 41
 394 U.S. 103 at 108, 89 S.Ct. 956 at 959.
 
 
 42
 We have heretofore noted that the environmental impact statement mandated by this Court had not been prepared and filed when the opinion was rendered by the Trial Court herein. District courts are without jurisdiction when confronted with non-justiciable political questions. Baker v. Carr,supra. Congress has exclusive plenary legislative authority over Indians and all of their tribal relations. Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903). This Court has long recognized the plenary power of Congress to control and manage the affairs of its Indian wards. Wolfe v. Phillips, 172 F.2d 481 (10th Cir. 1949), cert. denied, 336 U.S. 968, 69 S.Ct. 941, 93 L.Ed. 1119 (1949). Courts should afford great deference to interpretations by an agency charged with the duty of carrying out statutory mandates. Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); National Indian Youth Council, Intermountain Indian School Chapter v. Bruce, 485 F.2d 97 (10th Cir. 1973), cert. denied, 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974).
 
 
 43
 It seems appropriate here, in the sense of remedial decree, to observe that in Toilet Goods Association v. Gardner, Secretary of HEW, supra, the Supreme Court pointed out that any existing adverse consequences were minimal. 387 U.S. 158 at 166, 87 S.Ct. 1520, 18 L.Ed.2d 697. Certainly the same may be said in the case at bar.
 
 
 44
 In Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937), the Court held that a controversy, in the constitutional sense and in the sense of the Declaratory Judgment Act, must be justiciable it must be definite and concrete touching the legal relations of the parties having adverse legal interests, and it must be a real and substantial controversy admitting of specific relief through a conclusive decree, as distinguished from an opinion advisory in nature.
 
 
 45
 We are cognizant of our rule that the decision of the federal trial court to afford declaratory relief must be sustained, absent a clear abuse of discretion. Shannon v. Sequeechi, 365 F.2d 827 (10th Cir. 1966), cert. denied, 386 U.S. 481, 87 S.Ct. 1175, 18 L.Ed.2d 225 (1967). This court has consistently held, however, that the test for determining an actual controversy via declaratory judgment proceedings is whether there is a controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant issuance of declaratory judgment. United States v. Fisher-Otis Company, Inc., 496 F.2d 1146 (10th Cir. 1974); Duggins v. Hunt, 323 F.2d 746 (10th Cir. 1963).
 
 
 46
 We cannot render advisory opinions on unknown facts. Christian Echoes National Ministry, Inc. v. United States, 404 F.2d 1066 (10th Cir. 1968); Oklahoma City, Oklahoma v. Dulick, supra.
 
 
 47
 Finally, we hold that declaratory judgments are improper when, as here, ongoing activity may radically change the factual situation. In Mechling Barge Lines v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961), the Supreme Court, in holding that declaratory judgment is a remedy committed to judicial discretion, held, inter alia:
 
 
 48
 We think that sound discretion withholds the remedy where it appears that a challenged "continuing practice" is, at the moment adjudication is sought, undergoing significant modification so that its ultimate form cannot be confidently predicted.
 
 
 49
 368 U.S. 324 at 331, 82 S.Ct. 337 at 341.
 
 
 50
 The instant proceeding was not properly one for declaratory disposition.
 
 
 51
 Reversed.
 
 
 
 [1]
 Prior to the amendment of June 2, 1970, (84 Stat. 302), § 415 provided, inter-alia, that " . . . all leases and renewals shall be made under such terms and regulations as may be prescribed by the Secretary of the Interior." This section, as amended, now includes this provision:
 Prior to approval of any lease or extension of an existing lease pursuant to this section, the Secretary of the Interior shall first satisfy himself that adequate consideration has been given to the relationship between the use of the leased lands and the use of neighboring lands; the height, quality, and safety of any structures or other facilities to be constructed on such lands; the availability of police and fire protection and other services; the availability of judicial forums for all criminal and civil causes arising on the leased lands; and the effect on the environment of the uses to which the leased lands will be subject.
 
 
 [2]
 25 C.F.R. § 1.4 authorizes the Secretary of the Interior to adopt particular State statutes, codes, regulations, rules or other regulations in order to provide complementary leasing of Indian land with adjacent State land
 
 
 [3]
 25 C.F.R. § 131 consists of detailed rules and regulations governing the authority granted to the Secretary prior to the June 2, 1970, amendment to § 415, supra, relating to the terms and conditions of all leases and renewals thereof