564 F.2d 916
 McCULLOCH GAS PROCESSING CORPORATION, Plaintiff-Appellant,
v.
BLACK HILLS OIL MARKETERS, INC., Reserve Oil Purchasing
Company, NGL Marketing, Inc., Eastern Petroleum
Company, Fall River Gas, Inc. and Ted
Bonde, Defendants-Appellees.
BLACK HILLS OIL MARKETERS, INC., and Reserve Oil Purchasing
Company, Third-Party Plaintiffs-Appellees,
v.
FARMLAND INDUSTRIES, INC., Third-Party Defendant-Appellee.
 No. 76-1598.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Sept. 26, 1977.
Decided Oct. 25, 1977.
 
 Morris R. Massey of Brown, Drew, Apostolos, Barton & Massey, Casper, Wyo., for plaintiff-appellant.
 Richard E. Day of Wehrli & Williams, Casper, Wyo., and Walter C. Urbigkit, Jr., of Urbigkit, Mackey, Whitehead & Sullivan, P. C., Cheyenne, Wyo., for appellees Farmland Industries, Inc., and Black Hills Oil Marketers, Inc.
 Lawrence E. Middaugh, Casper, Wyo., for appellees NGL Marketing, Inc., Eastern Petroleum Co., Fall River Gas, Inc., and Ted Bonde.
 Before SETH and DOYLE, Circuit Judges, and STANLEY,* District Judge.
 WILLIAM E. DOYLE, Circuit Judge.
 
 
 1
 This is a case in which the plaintiff-appellant McCulloch Gas Processing Corporation sought to collect a price increase provided for in contracts with defendants-appellees Black Hills Oil Marketers, Inc. and NGL during a period in 1971-72 when price freezes were in effect. These freezes consisted of Phase I of the price control program instituted August 15, 1971, pursuant to an Executive Order of the President, and Phase II of the price control program issued November 13, 1971. Therefore, the actions of the parties during the periods in question must be considered in the light of the contract together with the construction of the regulations issued pursuant to the Economic Stabilization Act of 1970.
 
 
 2
 On April 1, 1971, Black Hills entered into an agreement with McCulloch, the plaintiffappellant, for the purchase of propane gas. Black Hills, which in effect was a broker, entered into a contract effective the same day with Farmland Industries, Inc., for the sale of the same propane to that company.[1] McCulloch also entered into a similar contract with NGL Marketing, Inc., covering the same period and at the same rate. Both of these contracts made provisions for a step price increase effective on deliveries made after October 1, 1971. The right of McCulloch to effect this increase is the controversial provision in the contract.
 
 
 3
 The Executive Order of the President, No. 11615, was promulgated on August 15, 1971. It froze prices for a 90-day period. It became known as Phase I. Contained in it was an exception for seasonal price changes. This provision has little importance at present because rulings sought from the IRS that the October 1 price increase was seasonal and, therefore, an exception to the Phase I freeze, were refused by that agency and are not in issue here.
 
 
 4
 The regulations which are a part of Phase II must be construed. The important one of these is § 300.101 (6 C.F.R. § 300.101) (no longer in effect). It provides:
 
 
 5
 The price specified in any contract for the sale of property or services entered into before August 15, 1971, with respect to any delivery or performance occurring after November 13, 1971, shall be allowable if that contract price does not exceed that amount which would result in an increase in the person's profit margin over that prevailing during the base period. In addition, each prenotification firm must comply with § 300.51.
 
 
 6
 McCulloch applied for and received a ruling on whether this regulation permitted the step increase in price provided for in the contract. McCulloch claims that the ruling given was favorable.[2] The defendants-appellees deny that it was and have refused to pay the increased price despite the favorable ruling of IRS. Thereupon, McCulloch brought the present action in the United States District Court for the District of Wyoming, invoking diversity jurisdiction.
 
 
 7
 Black Hills denies its liability on the claim, but filed a third-party action against Farmland Industries. The amount of the damages in this suit was not in issue. There were stipulated to be $131,048.72 in the Black Hills contract and $36,126.16 under the NGL contract.
 
 The district court found:
 
 8
 That although McCulloch applied for a ruling from IRS pursuant to 6 C.F.R. § 300.101, no notice of this request was furnished by it to Black Hills or to Farmland and neither of these companies had any knowledge that the request for a hearing had been made.
 
 
 9
 That with respect to contracts made before August 15, 1971, it was essential to the validity of a price increase that McCulloch comply with § 300.101, supra, insofar as it required that the increase would not result in an increase in McCulloch's profit margin over that which prevailed during the base period.
 
 
 10
 That the Price Commission had, by an interpretation dated January 20, 1972, said that in determining whether there would be an increase in profit margin during the period of the escalation of the price, the profit margin of the parent company had to be considered where the subsidiary was newly created as was McCulloch and had no history of its own.
 
 
 11
 That prenotification of the Price Commission was required under the regulations and McCulloch had failed to so notify either the Price Commission, Black Hills or the ultimate purchaser, Farmland.
 
 
 12
 By reason of the trial court's further finding that there had been a failure to furnish the Price Commission with full information concerning the impact on McCulloch's profit margin, the ruling of IRS was held to be invalid. The court concluded that McCulloch could not recover the amount allegedly owed based upon the step increase of October 1, 1971, provided for in the contracts.
 
 
 13
 The first question is whether McCulloch Gas, the subsidiary being newly created, was obligated to show the absence of an increased profit margin as required by the regulation on the basis of the profit record of McCulloch Oil, the parent firm. There is no case law on this issue or on the second question stated below. The Price Commission issued an interpretative ruling on January 20, 1972, which was in conflict with the ruling that it gave to McCulloch in that it said that profit comparisons for a conglomerate corporation had to be made with respect to the entire corporation including subsidiaries and divisions. This was issued almost contemporaneously with the ruling favoring McCulloch Gas five days before the ruling that favored the implementation of the price increase by McCulloch.
 
 
 14
 The second question is whether the trial court erred in holding that McCulloch did not implement the price increase until January 25, 1972, at which time the IRS issued its ruling. See footnote 2 above.
 
 I.
 
 15
 THE PRESENCE OR ABSENCE OF AN INCREASED PROFIT MARGIN, 6
 
 C.F.R. § 300.101
 
 16
 McCulloch Gas vigorously opposes the recognition of the interpretation saying that it constitutes a retroactive application. We disagree with the McCulloch position on this. There is no retroactive aspect here since it is merely an interpretation of a previously issued regulation. It is not like the promulgation of a new regulation. The ruling given to McCulloch by the IRS to the effect that a newly created subsidiary need not make a showing as to profit history during the base period is out of harmony with both the language and purpose of the regulation. It makes no sense to allow a newly created subsidiary to implement a price increase merely by reason of its not having a profit history where it derives wholly and completely from a parent corporation which has such a history. It is more reasonable to conclude that the profit history of the entire organization is properly within the sweep of the regulation.
 
 
 17
 The question whether the price of McCulloch Gas would prove to exceed "that amount which would result in an increase in the . . . profit margin over that prevailing during the base period" is not answered by the record. Evidence was not offered on this question and no finding of fact was made. If, then, it is determined that the price was implemented before December 31, 1971, whereby notice to the Price Commission was unnecessary, the cause will have to be remanded for the purpose of ascertaining whether McCulloch Oil Company would be affected by the price increase.
 
 II.
 
 18
 THE ISSUE AS TO WHEN THE PRICE INCREASE WAS IMPLEMENTED
 
 
 19
 Black Hills contends that McCulloch is a prenotification firm and that under § 300.101 of the regulations it must comply with § 300.51, which requires 30 days advance notice to the Price Commission of a price increase. The definition of a prenotification firm is found in § 101.11(a)(1) of the regulations which provides that it is a corporation having annual sales or revenues amounting to 100 million dollars or more. The other classification is a reporting firm. This has annual sales or revenues of 50 million dollars to 100 million dollars. A reporting or price category II firm, as it is sometimes called, need not prenotify. It is only required to provide quarterly reports on prices and profits to the Price Commission. See § 101.13, Title 6.
 
 
 20
 Black Hills is handicapped in its argument that McCulloch is to be regarded as a prenotification firm because the trial court found that McColloch continued to be a reporting firm until December 31, 1971, and became a prenotification firm after that. The parties have not challenged this finding. McCulloch did fail to give notice that would be required of a prenotification firm. The trial court determined that January 25, 1972, the date McCulloch received a favorable IRS ruling, was the date of notice and of implementation. The issue then narrows down to whether the price increase was implemented by McCulloch before December 31, 1971. If it was, it was valid provided it is not in violation of the profit restriction contained in § 300.101, supra.
 
 
 21
 It is our opinion that the trial court erred in its holding that the crucial implementation date was January 25, 1972. The ruling of IRS was not necessary to implementation. McCulloch was taking a superfluous step in obtaining this approval. Express approval was not provided in the regulation.
 
 
 22
 McCulloch's position is that the increase was implemented on November 13, 1971, which is the earliest day that the Phase II regulation would allow the price increase to go into effect. We consider this to be a more realistic implementation date. The price increase was specifically provided for in the contract and was finally approved by the Price Commission. Throughout the dealings between the parties McCulloch consistently maintained its right to collect this step increase. In order to decide that McCulloch did not have a policy to obtain the increase, there would have to be some evidence of a disposition to waive it on McCulloch's part. No such evidence is present.
 
 
 23
 Judge Kerr was influenced by the fact that neither Black Hills nor Farmland was notified of the price increase until after the ruling had been obtained. This does not say that they were not notified of the fact that McCulloch was seeking to charge it. In our view, formal notice to these firms was unnecessary. After all, the regulations did not require it.
 
 
 24
 The facts applicable to Black Hills and to NGL are somewhat different so we summarize the facts pertaining to implementation as to these two firms on a separate basis.
 
 As to NGL :
 
 25
 Regular invoices were given to NGL by McCulloch at the increased rate. It was then immaterial whether NGL knew that McCulloch had sought such an increase. Even, then, assuming that some kind of notice was required, there can be no question whatever but that the requirement as to NGL was satisfied. This means that the judgment of the district court as to NGL must be reversed subject, of course, to the issue which we have discussed above, namely whether the increased price would result in an increase in the profit rate of McCulloch over that prevailing during the base period.
 
 As to Black Hills :
 
 26
 McCulloch did not send any formal notice to Black Hills as to its application for a price increase under 6 C.F.R. § 300.101. However, we find no explicit requirement as to this in the regulations. It is impossible, in any event, to agree that Black Hills was unaware of the fact that McCulloch was charging in accordance with the October 1 step increase. After all, the increase was sought by McCulloch to the knowledge of Black Hills and by Black Hills as well under Phase I, and a letter was written on November 17 by Black Hills saying that it would continue to pay the summer price because its application for a seasonal increase had been denied by IRS.
 
 
 27
 While there is no evidence in the record of a formal communication between Black Hills and McCulloch from November 17, 1971 to February 9, 1972, nevertheless the parties were shown to have been in continuous communication. Their agents met regularly to settle invoices and there were discussions between them as to the increased price. After all, the contract called for this step increase to take place on October 1. There is no showing that McCulloch was inclined to waive this. The contrary is true. So, then, a finding that Black Hills was unaware of McCulloch's intent to implement is contrary to the record.
 
 
 28
 We are of the opinion, then, that prenotification by McCulloch to Black Hills was not required under the regulations. In view of our further opinion that the price was implemented while McCulloch was simply a reporting firm, it is adjudged that the cause be remanded to determine whether the price increase would result in an increase in the profit margin over that prevailing during the base period. If the answer to that is no, judgment should be entered in favor of McCulloch.
 
 
 29
 On remand, the trial court may also have to determine the third-party claim. It has not been taken up previously because it was unnecessary in view of the court's ruling in favor of Black Hills and NGL. If judgment is entered in favor of McCulloch, on remand the trial court must then consider the third-party claim of Black Hills against Farmland.
 
 
 30
 Accordingly, the cause is remanded for the specific purposes that are mentioned.
 
 
 
 *
 Of the District of Kansas, sitting by designation
 
 
 [1]
 McCulloch Gas Processing Corporation, the plaintiff-appellant, is a wholly-owned subsidiary of McCulloch Oil Corporation
 
 
 [2]
 The pertinent part of the ruling is as follows:
 The facts provided demonstrate that McCulloch Gas Processing Corporation had entered into several contracts prior to November 15, 1971, which increased the price of propane gas as of October 1 or as of November 1, 1971. While these price increases were, of course, held in abeyance until November 13, 1971 pursuant to the President's Executive Order Number 11615, § 300.101 of the regulations promulgated and amended by the Price Commission to be effective after that date provide that increases specified in such contracts may be effective with respect to delivery or performance occurring after November 13. The one proviso to this section, that the contract price may not exceed that amount which would result in a higher profit margin than that which prevailed during the base period, is here inapplicable because McCulloch had no sales and therefore no profit margin during the period designated by § 300.5 of the Economic Stabilization Regulations as the "base period." Therefore, the price increases incorporated into the contracts entered into before November 15, 1971, are allowable under the Regulations, and may go into effect.