McCULLOCH GAS PROCESSING CORPORATION, Plaintiff,

v.

BLACK HILLS OIL MARKETERS, INC., Reserve Oil Purchasing Company, NGL Marketing, Inc., Eastern Petroleum Company, Fall River Gas, Inc., and Ted Bonde, Defendants.

BLACK HILLS OIL MARKETERS, INC. and Reserve Oil Purchasing Company, Third-Party Plaintiffs,

v.

FARMLAND INDUSTRIES, INC., Third-Party Defendant.

Civ. No. 5825.

United States District Court, D. Wyoming.

Dec. 20, 1978.

Morris R. Massey and Claude W. Martin of Brown, Drew, Apostolos, Massey & Sullivan, Casper, Wyo., of counsel, for plaintiff McCulloch Gas Processing Corporation.

Richard E. Day of Wehrli & Williams, Casper, Wyo., of counsel, for defendants and third-party plaintiffs Black Hills Oil Marketers and Reserve Oil Purchasing.

Lawrence E. Middaugh of Middaugh & Ross, Casper, Wyo., of counsel, for defendants NGL Marketing, Inc., Eastern Petroleum Company, Fall River Gas, Inc., and Ted Bonde.

Walter C. Urbigkit, Jr. of Urbigkit, Mackey & Whitehead, P. C., Cheyenne, Wyo., of counsel, for third-party defendant Farmland Industries, Inc.

## MEMORANDUM OPINION

KERR, District Judge.

This case is before this Court for the second time. In the first trial, judgment was entered for the defendants. Plaintiff prosecuted an appeal to the United States Court of Appeals for the Tenth Circuit. The Court of Appeals remanded with specific instructions to the trial Court. See 564 F.2d 916 (10th Cir. 1977). No useful purpose would be served in restating the facts as they are fully set forth in the opinion of the Court of Appeals, supra.

In this action, plaintiff McCulloch Gas Processing Corporation ("McCulloch") seeks to collect from Black Hills Oil Marketers, Inc. ("Black Hills") and NGL Marketing, Inc. ("NGL") the amount of contracted price increases for propane sold to Black Hills and NGL during the period from November 13, 1971 through March 31, 1972. McCulloch sold the propane to Black Hills and to NGL under two separate agreements, both of which were entered into before August 15, 1971, the date on which the price freeze commenced. The amounts of the price increases have been stipulated to total $131,048.72 in the case of Black Hills and $36,126.16 in the case of NGL.

Price Commission regulations provide that the price specified in any sales contract entered into before August 15, 1971, with respect to any delivery occurring after November 13, 1971, shall be allowable if that contract price does not exceed that amount which would result in an increase in that person's profit margin over that prevailing during the base period. 6 C.F.R. § 300.101. Price Commission regulations define "profit margin" as the ratio that operating income bears to net sales as reported on the person's financial statements prepared in accordance with generally accepted accounting principles consistently applied. 6 C.F.R. § 300.5. "Base period" is defined as any two, at the option of the person concerned, of that person's last three fiscal years ending before August 15, 1971. 6 C.F.R. § 300.5.

McCulloch Oil Corporation chose the years 1969 and 1970 as its base period.

The Court of Appeals remanded the case to this Court with directions to consider the following question and to enter judgment accordingly:

"[W]hether the (propane) price increase would result in an increase in the profit margin [for each of the years 1971 and 1972] over that prevailing during the base period. If the answer to that is no, judgment should be entered in favor of McCulloch." 564 F.2d 916, at 921.

After the case was remanded to this Court and before the hearing, extensive discovery was conducted. McCulloch afforded the defendants and the third-party defendant ample opportunity to conduct a

thorough and searching discovery through all of its records. Through these discovery proceedings, defendants and third-party defendant have advanced their contentions as to the issue framed by the Court of Appeals.

The issue is resolved into the question of whether certain categories of revenues ("net sales" in price regulation nomenclature) and income before taxes ("operating income" in price regulation nomenclature) are to be included, or on the other hand are to be excluded, in utilizing a person's financial statements for calculation of profit margins. In other words, the question is whether, in the translation of "revenues" into "net sales" and "income before taxes" into "operating income", certain items are to be included or, on the other hand, excluded.

None of the parties questioned the accuracy of the "revenue" figures set forth in McCulloch Oil Corporation's Consolidated Statement of Operations for the four years ended December 31, 1973. A tabulation of these figures appears in Item 2, page 4, Plaintiff's Exhibit 26, Defendants' Exhibit G. The revenue figures are as follows:

Year Ended December 31

| 1969 | 1970 | 1971 | 1972 |
|------|------|------|------|
| (In Thousands of Dollars) | | | |
| 43,543 | 65,904 | 96,668 | 123,720 |

Item 2 of this Exhibit, on page 5, also tabulates the income (loss) before income taxes for the same years (the accuracy of these figures is likewise not questioned):

| 1969 | 1970 | 1971 | 1972 |
|------|------|------|------|
| (In Thousands of Dollars) | | | |
| 6,450 | 6,294 | 4,332 | (2,014) |

The adjustments to these revenue and income figures contended by defendants and third-party defendant to be appropriate in order to arrive at "covered net sales" and "operating income" figures for profit margin calculation purposes are portrayed on Defendant's Exhibit M. It may be assumed arguendo that defendant is correct in its treatment of all adjusting entries except those pertaining to land sales and the profit from land sales. With this assumption, Exhibit M illustrates that the only way in which it could possibly be demonstrated that the base period profit margin was exceeded in either 1971 or 1972 is to further assume that defendants and third-party defendant are correct when, in the calculation of profit margins, they exclude all entries pertaining to land sales and profit from the revenue and income totals for all years under consideration. With this further assumption, it is made to appear that the base period profit margin was 0.49%, while the 1971 profit margin is made to appear as an amount in excess thereof, 1.52%.

The crucial issue can therefore be further refined to the question of whether entries pertaining to land sales and profit are properly excluded from consideration in calculation of profit margins. If exclusion is proper, it is possible, by adopting defendants' arguments in all other respects, to make it appear that the 1971 profit margin exceeded the base period profit margin (even then it is not made to appear that this excess results from implementation of the contracted propane price increases). If entries pertaining to land sales and profit are properly included in the calculations, it cannot be made to appear that the calculated base period profit margin was exceeded in either 1971 or 1972.

The contention that the financial data pertaining to land sales and profit are to be excluded when calculating profit margins rests upon an interpretation drawn from the positions where certain regulations appear in the Code of Federal Regulations. Part 101 of the Code sets forth certain categories of property and services, price adjustments with respect to which are exempt from coverage. 6 C.F.R. § 101.31. Price adjustments with respect to sales of unimproved real estate are in this exempt category. 6 C.F.R. § 101.33. (The sales of McCulloch Properties, Inc., a wholly owned subsidiary of McCulloch Oil Corporation, are almost exclusively sales of unimproved real estate.) Section 300.1(b) of 6 C.F.R. provides:

"This part (Part 300) does not apply to the sale or lease of any property or ser-

vice that is exempted by Part 101 of this title."

Since the regulations pertaining to profit margin limitations appear in Part 300, defendants and third-party defendant infer that sales of unimproved real estate which are exempt from coverage with respect to price adjustments under Part 101 are not only exempt but are to be excluded from consideration in the calculation of profit margins.

If the cited regulations were the only authority, the point urged might be well taken. These regulations are not the sole authority, however. It was the Price Commission itself which promulgated § 300.1(b), the provision relied upon as requiring exclusion of land sales and profit data in the calculation of profit margins. The Price Commission has never affirmatively adopted the interpretation which is urged but has, on the contrary, affirmatively determined that land sales and profit data are to be included in profit margin calculations even though land sales may be exempt transactions.

By a Price Commission interpretation dated January 20, 1972 (¶ 1021.40, CCH, Economic Controls, Phase II Rules Transfer Binder, Nov. 14, 1972—Jan. 10, 1973), the Commission determined:

"In general, profit margins should not adjusted to delete exempt transactions. However, certain specific areas may be deleted for purposes of computing a profit margin. These include farming, life insurance, wholly-owned foreign subsidiaries whose principal business and customers are also overseas, and public utilities."

By Ruling 1972–36 (¶ 1021.40, supra), the Price Commission holds:

". . . The net profits and gross sales utilized in the computation of both base period and current period profit margins include profits and sales relating to both exempt and nonexempt products."

This ruling (published also as Cost of Living Council Ruling 1972–11) was published February 10, 1972, 37 F.R. 2990, and applies to all transactions taking place after November 13, 1971.

The following statements are excerpted from a Price Commission statement of May 3, 1972, concerning calculations of profit margins (¶ 1021.89, supra):

"EXEMPT ITEMS INCLUDED—revenues from the sale of exempt items, such as raw agricultural products, custom products and services must be included in profit margin calculations.

REVENUES NOT COVERED—revenues not included in profit margin calculations are those from subsidiaries involved in farming, public utilities or life insurance and those from wholly owned foreign subsidiaries."

The administrative agency that promulgated and enforced the regulations under consideration is the very same administrative agency that issued the interpretations referred to above. There are no contrary administrative interpretations.

■ Courts afford great deference to the administrative interpretations made by the agency charged with the responsibility for administering the regulations.

Judge Barrett stated in *National Indian Youth Council v. Bruce*, 485 F.2d 97, 99 (10th Cir. 1973), cert. denied 417 U.S. 920, 94 S.Ct. 2628, 41 L.Ed.2d 226 (1974):

"[G]reat deference should be afforded to interpretations by the agency charged with the duty of carrying out statutory mandates."

This same principle is cited in *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616, 625 (1965); *Zemel v. Rusk*, 381 U.S. 1, 11, 85 S.Ct. 1271, 14 L.Ed.2d 179, 187 (1965); *United States v. State of New Mexico*, 536 F.2d 1324, 1328 (10th Cir. 1976); *Norvell v. Sangre de Cristo Development Co., Inc.*, 519 F.2d 370, 378 (10th Cir. 1975); *Garvey v. Freeman*, 397 F.2d 600, 605 (10th Cir. 1968). Particularly is this respect due when the administrative interpretation is made by those charged with the responsibility of setting the machinery of the regulations in motion and of making the parts work efficiently and smoothly while they are yet untried and new. Judge Breiten-

stein held in *United States v. Harrison* and *Grimshaw Construction Co.,* 305 F.2d 363, 368 (10th Cir. 1962), cert. denied 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962):

> "Such interpretations made almost contemporaneously with statute enactment by men charged 'with the responsibility of setting its machinery in motion' are entitled to great weight."

This legal principle is also enunciated in the cases of *Udall v. Tallman,* supra; *Power Reactor Development Co. v. International Union of Electrical Radio and Machine Workers,* 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924, 932 (1961); *Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796, 870 (1933).

■ This Court must follow the Price Commission's administrative directives to the effect that sales and profit figures pertaining to certain exempt transactions, including such financial data which pertain to sales of unimproved real estate, are to be considered in the computation of both the base period and current period profit margins. If the financial data pertaining to land sales and profit are reintroduced to the profit margin calculations portrayed on Defendants' Exhibit M, the revised calculations will demonstrate a base period profit margin of 9.03%, a 1971 profit margin of 6.28% and no profit margin in 1972, since a loss was experienced in that year.

The mandate of the Court of Appeals does not require this Court to determine specific profit margin percentages. The mandate requires only that a determination be made as to whether the subject price increases would result in an increase of the profit margin over that prevailing during the base period. Plaintiff's uncontroverted testimony showed that the propane price increase increments were included in the foregoing "net sales" figures. Using these sales and profit figures, adjusted in all respects as urged by defendants and third-party defendant save one, it is apparent that the answer to the question propounded by the Court of Appeals is "no." Accordingly, judgment will be entered in favor of plaintiff and against all defendants.

With regard to the third-party claim of Black Hills against Farmland, Black Hills and Farmland have agreed to a resolution of that claim. This will make a consideration of the third-party claim unnecessary.

This Memorandum Opinion will constitute the Findings of Fact and Conclusions of Law and additional findings and conclusions are unnecessary.